UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BILLY CHAMBERS,

    Defendant.

_____/

Criminal Action No.
13-CR-20684

HON. MARK A. GOLDSMITH

**<u>OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 13)</u>**

## I. INTRODUCTION

Defendant Billy Chambers, who is currently charged with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), has filed a motion to suppress evidence, including the gun that state troopers found on him during a purportedly unconstitutional search. Def. Mot. (Dkt. 13). Defendant argues the search was unconstitutional for two reasons: (i) the troopers lacked probable cause to stop him and (ii) his consent to be searched was not freely and voluntarily given. The Government filed a response (Dkt. 29), the Court held a hearing at which the arresting troopers and a local resident testified, and the parties filed supplemental briefs (Dkts. 33, 35, 37). Because the Court concludes that the troopers had probable cause to stop Defendant, and because consent was freely given, the Court denies Defendant's motion.

## II. BACKGROUND

Defendant was walking in the middle of Bonbright Street, south of East Hamilton Avenue, in Flint, Michigan on August 31, 2013, at approximately 10:00 p.m., when two Michigan State Police troopers — Terry Berdan and Brian Kross — spotted him from their marked police

1

vehicle as they turned left onto Bonbright from Hamilton. Hr'g Tr. at 27-31, 64-66, 81 (Dkt. 31). The troopers decided to advise Defendant that walking in the street is a civil infraction under Michigan law. Id. at 35, 47-49, 56-57, 67-69, 81-82. The troopers stopped in the middle of Bonbright, asked Defendant to come over to their vehicle, and both troopers got out of the car. Id. at 47-48, 67, 81. As the troopers were getting out of their vehicle, Defendant, without prompting, yelled that he did not "have anything" on him. Id. at 32, 49-50, 52-53, 67, 98. Trooper Berdan explained that Defendant needed to walk on the sidewalk rather than the street, and he asked Defendant whether he minded if he (Trooper Berdan) patted him down for weapons and/or illegal drugs; Defendant responded, "Go ahead." Id. at 33-34, 67, 85-86, 92, 98. As Trooper Berdan was patting down Defendant's leg, he felt what he believed to be a handgun in Defendant's left, front pant pocket. Id. at 34, 67-68. Trooper Berdan pulled Defendant's pocket flap and saw the back strap of a gun. Id. at 68. Trooper Berdan then placed Defendant in handcuffs and seized the gun, which forms the basis for the current charge. Id. at 34, 68. Trooper Berdan testified that this entire sequence of events — from initially making contact with Defendant to his arrest — lasted approximately one minute to a minute and twenty seconds; Trooper Kross estimated it lasted less than five minutes. Id. at 35, 68.

### III. ANALYSIS

Defendant raises two main arguments in support of his motion to suppress. First, Defendant argues that the troopers did not have probable cause to stop him for commiting a civil infraction — walking in the middle of the street — because the nearby sidewalks were dangerous and impassable. Def. Supp. Br. at 2-3 (Dkt. 33). Second, Defendant asserts that any consent was not voluntarily and freely given, but rather was "a submission to a claim of authority." Id. at 4-7.

The Court addresses each argument in turn.[1]

### A. The troopers had probable cause for the stop.

Defendant first argues that the troopers did not have probable cause to stop him. Defendant recognizes that, where passable sidewalks are provided, walking in the street constitutes a civil infraction under Michigan law. Def. Supp. Br. at 2-3. However, Defendant maintains that the "sidewalks in the neighborhood were in such atrocious conditions that it would be dangerous for any person, especially an older gentleman like Defendant, to use the sidewalks. And this would be especially true at night." Id. at 3. Defendant also asserts that the troopers knew that the sidewalks on the next block were so overgrown with tall grasses and weeds that they were impassable, and that people in the neighborhood were afraid to walk close to the side of the street because they did not know what was lurking in the tall grasses and weeds. Id.

The Government responds that the troopers had probable cause to stop Defendant because he was committing a civil infraction, i.e., walking in the middle of the road. Gov't Resp. at 3-4; Gov't Supp. Br. at 6-8.[2]

"In order to effect a traffic stop, an officer must possess either probable cause of a civil

---

[1] In his motion to suppress, Defendant also argued that the Michigan State Police may have a policy of stopping people who are walking in the middle of the street — regardless of sidewalk condition — and that such policy is applied disproportionately to African-American males. Def. Mot. at 2 (Dkt. 13). Defendant claimed that, if such a policy existed and was discriminatorily applied, his due process rights were violated. Id. Defendant did not expand on this argument in his supplemental brief, nor did he introduce any evidence of such a policy at the hearing. To the contrary, Trooper Berdan testified that he is aware of no such policy. Hr'g Tr. at 86. Therefore, the Court deems this claim abandoned with respect to the instant motion. Moreover, even if not abandoned, the Court finds this argument unsupported, and rejects it.

[2] The Government initially argues that this was just a consensual encounter, not a stop for Fourth Amendment purposes. Gov't Resp. at 2-3 (Dkt. 29); Gov't Supp. Br. at 5. Because the Court concludes that the troopers had probable cause to stop Defendant under the Fourth Amendment analysis, it need not decide whether this interaction alternatively qualified as a consensual encounter.

infraction or reasonable suspicion of criminal activity." United States v. Lyons, 687 F.3d 754, 763 (6th Cir. 2012). Here, the Government asserts that the troopers stopped Defendant for walking in the middle of the road, a civil infraction. The Government must, therefore, prove that the troopers possessed probable cause. This requires a "reasonable ground for belief, supported by less than prima facie proof but more than mere suspicion" that a civil infraction was being committed. United States v. Powell, No. 12-20246, 2012 WL 6096600, at *2 (E.D. Mich. Dec. 7, 2012). A determination of probable cause is based on a "realistic assessment of the situation from a law enforcement officer's perspective." United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993).

Michigan law sets forth the standards on where pedestrians may walk with respect to roads:

> (1) Where sidewalks are provided, a pedestrian shall not walk upon the main traveled portion of the highway. Where sidewalks are not provided, pedestrians shall, when practicable, walk on the left side of the highway facing traffic which passes nearest.
>
> (2) A person who violates this section is responsible for a civil infraction.

Mich. Comp. Laws § 257.655. The law goes on to state that "[a] police officer who witnesses a person violating this act . . ., which violation is a civil infraction, may stop the person, detain the person temporarily for purposes of making a record of vehicle check, and prepare and subscribe . . . a written citation." Mich. Comp. Laws § 257.742(1).

Defendant does not dispute that sidewalks existed where he was stopped, and that he was walking in the middle of the street. Rather, Defendant argues that the sidewalks were impassable, and thus he was required to walk in the road. Assuming this to be the case,[3] however, the

---

[3] The Court notes that the sidewalks actually may have been passable at the time of the stop. Trooper Berdan testified that he specifically looked to ensure the sidewalk was navigable before

4

undisputed testimony shows that Defendant was walking in the <u>center</u> of the street, not on the left side "facing traffic which passes nearest." See Hr'g Tr. at 30 (walking in middle of the road); 32 (walking "almost right in the middle of the road"); 66-67 (same). From a realistic assessment of the situation from a law enforcement officer's perspective, this constituted a civil infraction.

Indeed, Trooper Berdan correctly testified that, even if "there are not sidewalks provided or they're not navigable, you're supposed to walk to the extreme left of the street. You're not allowed to walk down the center of the street." Id. at 91. He also testified that Defendant was violating this portion of the rule, even if the sidewalk was not available. Id. at 91-92. Accordingly, the Court finds that the troopers had probable cause to believe Defendant was committing a civil infraction by violating Mich. Comp. Laws § 257.655. See, e.g., People v. Thompson, No. 298974, 2011 WL 4863885, at *2 (Mich. Ct. App. Oct. 13, 2011) ("Here, the officer had the authority to stop and temporarily detain defendant because of the ordinance violation that occurred in the officer's presence."); People v. Carson, No. 232873, 2002 WL 87360, at *2 (Mich. Ct. App. Jan. 22, 2002) (stop reasonable because defendant was observed committing unlawful activity, i.e., walking in the road); People v. Laube, 397 N.W.2d 325, 328 (Mich. Ct. App. 1986) ("Since the civil infraction provided a legitimate reason to stop the

---

stopping Defendant. Hr'g Tr. at 67, 69. Furthermore, Hana Cheatom — the individual who lives in the house adjacent to where Defendant was stopped — testified that the sidewalk in front of her home is in good condition. Hr'g Tr. at 22. Indeed, Defendant's exhibit C — showing the west sidewalk on Bonbright between Witherbee and Hamilton — reveals sidewalks that are not extraordinarily well-maintained, but at least passable. This lends further support to the Court's conclusion that the troopers had probable cause to stop Defendant for walking in the road.

Defendant also claims that he was walking north on Bonbright toward Hamilton, and that, even if the sidewalks on Bonbright south of Hamilton were passable, he needed to walk in the street because the west sidewalks on Bonbright north of Hamilton are impassable. See Def. Reply at 3. The Court rejects this argument. Defendant fails to explain why he could not have crossed the street to the east side of Bonbright at the Hamilton intersection, rather than walking in the middle of the road south of Hamilton.

defendant, the fact that the deputies may have had additional reasons which, if isolated, would not justify a stop, is irrelevant."); see also United States v. Schuett, No. 11-20574, 2012 WL 3109394, at *7 (E.D. Mich. July 31, 2012) (denying motion to suppress because, "[b]ased on Defendant's conduct [walking down the street], Detective-Lieutenant Uribe and Detective Box had probable cause to initiate the stop.").

Defendant also argues that probable cause did not exist, despite him walking in the middle of the street, because Trooper Berdan testified that he "knew that people in that neighborhood were afraid to walk too close to [the] left side of the street, as mandated by the statute, because they had no idea of what [sic] lurks in tall grasses and weeds." Def. Supp. Br. at 3. However, Defendant has added his own flare to the trooper's testimony. Trooper Berdan testified that he is aware that people do not like to walk "near the tall grass" because they do not know what may be hiding in it, such as skunks, raccoons, and people. Hr'g Tr. at 80-81. But Trooper Berdan did not testify that this tall grass precludes people from walking on the side of the street, as opposed to the middle; to the contrary, Trooper Berdan expressly testified that he "disagree[d]" that tall grass in an adjacent lot would require walking in the center of the road. Id. at 96-97. Moreover, in the photos Defendant entered as exhibits B and C, the tall grass in the vacant lot is separated from the street by a sidewalk and a curb with cut grass. Consequently, any concerns about safety could be remedied by walking on the left side of the street rather than the sidewalk; walking in the middle of the street was not required. The Court thus finds that, from the realistic assessment of the situation from a law enforcement officer's perspective, probable cause existed to believe Defendant was committing a civil infraction by walking in the middle of the street.

### B. Defendant's consent was valid.

Defendant also argues that his consent to be searched was not validly given. Def. Supp.

6

Br. at 4-7 (Dkt. 33); Def. Reply at 3-6 (Dkt. 37).[4] Defendant recognizes that he told the troopers to "go ahead" when asked if he minded if they search him for drugs or weapons. Def. Supp. Br. at 5. However, Defendant argues this was merely an expression of acquiescence, rather than an affirmative expression of consent. Id. In support of this claim, Defendant highlights testimony that (i) he was not free to leave at the time of the consent, (ii) he reacted in a way "consistent with complying with" the trooper's authority, and (iii) he went over to the car and "basically spread eagle" — i.e., placed his hands spread apart on the car — for the search. Id. at 5-6.

The Government responds that Defendant's consent was voluntarily and freely given. In support of this argument, the Government highlights that (i) the encounter was brief, (ii) the trooper only asked permission and did not ask any further questions, (iii) the troopers did not activate the patrol lights, have guns drawn, or physically restrain Defendant (e.g., with handcuffs), (iv) there is no evidence of threatening or coercive conduct, and (v) Defendant is a mature individual with experience with the criminal justice system. Gov't Supp. Br. at 12-13 (Dkt. 35).

The standards for analyzing whether consent was voluntarily given are well-established. "The government bears the burden of demonstrating by a preponderance of the evidence, though clear and positive testimony, . . . that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." United States v. Canipe, 569 F.3d 597, 602 (6th Cir. 2009) (internal quotation marks and citations omitted). This is a question of fact to be determined from the totality of all the circumstances. Id. Factors courts consider

---

[4] Defendant briefly argued in his initial motion that the troopers did not have probable cause to search him for weapons because they did not believe he was armed and dangerous. See Def. Mot. at 2. But Trooper Berdan's search was based on Defendant's consent, not probable cause. See United States v. Moon, 513 F.3d 527, 537 (6th Cir. 2008) ("An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search" (quotation marks, citations, and brackets omitted)).

7

when making this determination include: "the age, intelligence, and education of the suspect; whether the suspect understands the right to refuse consent; . . . the length and nature of the detention; the use of coercive or punishing conduct by the police; . . . indications of more subtle forms of coercion that might flaw the suspect's judgment;" and the suspect's experience with the criminal justice system. United States v. Cochrane, 702 F.3d 334, 342 (6th Cir. 2012).

The Court finds that the Government has shown, by a preponderance of the evidence through the clear and positive testimony of the two arresting troopers, that Defendant's consent was "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." Canipe, 569 F.3d at 602.[5] There is no dispute that — in response to Defendant's unprompted statement that he did not have anything on him — Trooper Berdan asked Defendant whether he would mind if Trooper Berdan pat-searched him for guns and illegal drugs; there also is no dispute that Defendant responded unequivocally, "Go ahead." Hr'g Tr. at 34, 67, 92, 98. Further, it is uncontested that the entire interaction lasted only a few minutes, and the troopers never withdrew their weapons or turned on their patrol lights during this time. Id. at 33, 57, 61, 68. 70.

In addition, although the troopers testified that Defendant was not free to leave because

---

[5] Although not disputed by Defendant, the Government claims that the request to perform a pat-down search for drugs and illegal weapons was permissible, even though unrelated to the stop, because it did not measurably exceed or prolong the time necessary to complete the original purpose of the stop. See Gov't Supp. Br. at 9-10 (citing Arizona v. Johnson, 555 U.S. 323 (2009) and United States v. Everett, 601 F.3d 484, 492 (6th Cir. 2010)); see also Def. Reply at 3 ("The issue here is not whether the questioning of Defendant was related to the traffic stop or whether the questioning unduly prolonged the stop."). The Court agrees. The entire chain of events was very short — between one minute and five minutes — and Trooper Berdan's request came while Trooper Kross was checking Defendant's identity in the computer system as part of the initial stop. Hr'g Tr. at 34. Therefore, the Court finds that this request did not measurably exceed or prolong the stop.

they had not decided whether to write him a ticket for the civil infraction, id. at 48-49, 51, 81, Defendant was not placed into handcuffs prior to giving consent, nor is there any indication that he asked or attempted to leave the scene but was stopped by the troopers. To the contrary, the troopers testified that (i) they did not tell Defendant he was under arrest prior to the search (nor was he under arrest) because they had only stopped him for a civil infraction, and (ii) Defendant was cooperative and did not show any resistance. Id. at 33-34, 92-93. Similarly, the troopers testified that they never threatened Defendant, nor was there evidence of any coercive promises. Id. at 70, 92-93. Finally, the Court notes that it appears Defendant is experienced with the criminal justice system, including convictions for drug offenses in 1991, 1992, and 2007.

Considering all these relevant factors and the totality of the circumstances, the Court concludes that the Government has met its burden. See Canipe, 569 F.3d at 602-604 (consent valid where duration of detention and questioning were reasonable; there was no evidence of coercion; defendant never asked to leave; he responded positively and umabiguously to the request for consent; and he had prior criminal convictions); see also United States v. Perry, 703 F.3d 906, 909 (6th Cir. 2013) (despite being drunk and hancuffed when given, consent valid where defendant had experience with criminal justice system; encounter was brief; and there was no evidence of repeat questioning or physical abuse).[6]

Defendant's arguments to the contrary are not persuasive. As described earlier, Defendant claims that his statement "go ahead" was merely an expression of acquiescence, rather than affirmative consent. In support of this position, Defendant highlights that (i) the troopers

---

[6] Although the troopers did not inform Defendant that he could refuse to give consent, the Court notes that, as Defendant recognizes, this does not automatically render the consent invalid. See Def. Supp. Br. at 6; see also United States v. Watson, 423 U.S. 411, 424 (1976). Viewed in the totality of the circumstances, the Court finds that this factor does not significantly undermine the voluntariness of Defendant's consent in this case.

testified he was not free to leave, and (ii) after saying "go ahead," Defendant placed his hands on the patrol car.

With respect to the fact that Defendant was not free to leave, the Supreme Court has held that this does not negate consent per se. In United States v. Watson, 423 U.S. 411 (1976), the officers arrested the defendant and gave him the Miranda warnings. The officers then asked the defendant if they could look inside his car, to which he responded, "Go ahead." Id. at 413. The Supreme Court, in reviewing the voluntariness of the defendant's consent, held as follows:

> We are satisfied in addition that the remaining factors relied upon by the Court of Appeals to invalidate Watson's consent are inadequate to demonstrate that, in the totality of the circumstances, Watson's consent was not his own "essentially free and unconstrained choice" because his "will ha(d) been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). There was no overt act or threat of force against Watson proved or claimed. There were no promises made to him and no indication of more subtle forms of coercion that might flaw his judgment. He had been arrested and was in custody, but his consent was given while on a public street, not in the confines of the police station. Moreover, the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search.

Id. at 424 (emphasis added); see also United States v. Nappier, 155 F. App'x 859, 866-867 (6th Cir. 2005) (consent was freely given, even though obtained after defendant had been handcuffed in the back of a police car for 5-10 minutes); Perry, 703 F.3d at 909 (consent valid even though handcuffed when given).

Similarly here, Defendant's consent was given while on a public street, not in the confines of the police station. Furthermore, Defendant was not yet arrested, he was not in handcuffs, the pre-consent detention was very brief, and there is no indication that he asked, tried, or intended to leave. To the contrary, the troopers testified that Defendant acted cooperatively until they located

the gun. Hr'g Tr. at 92-93. In addition, the request to search came after Trooper Berdan explained to Defendant — while Defendant was stating that he did not have anything on him — that they had stopped him because he needed to walk on the sidewalk, not the street. Id. at 98. This undermines Defendant's argument that the request sounded like "an arrest situation." Therefore, the Court does not find that Defendant's detention precludes a finding of voluntariness.

Defendant's argument about taking a "spread eagle" position on the car after consenting to be searched fares no better. Defendant is someone with experience in the criminal justice system, who likely knows the position one may take when going through a pat-down search. Here, Trooper Berdan expressly asked Defendant if he would mind if the trooper pat-searched him for guns and drugs, to which Defendant responded, "Go ahead." Trooper Berdenan then asked Defendant to turn around. Hr'g Tr. at 93, 98. It is, therefore, not surprising that Defendant subsequently took a position he believed appropriate for a pat-down search. In fact, just as Defendant points to this action as evidence of acquiescence, the Court concludes it reasonably should be interpreted the other way — that Defendant was consenting to the voluntary search by taking an appropriate position, without prompting, for being patted down.[7] See United States v. Taylor, 142 F.3d 438 (Table), 1998 WL 109979, at *6-7 (6th Cir. 1998) (non-verbal conduct, such as opening the trunk of a car, can support a finding of consent).

In short, the totality of the circumstances in this case leads the Court to conclude that the Government has shown, by a preponderance of the evidence, that Defendant validly consented to the search. This is not a case where Defendant merely indicated acquiescence, such as by saying "you've got the badge, I guess you can," thereby showing an expression of futility and

---

[7] Defendant highlights the trooper's agreement at the hearing that Defendant's conduct was "consistent with [Defendant] complying with [the trooper's] authority." Def. Supp. Br. at 5. The Court does not find this particularly persuasive for the reasons described above.

acquiescence. See United States v. Worley, 193 F.3d 380, 386 (6th Cir. 1999). Rather, when asked if he would mind if Trooper Berdan patted him down, Defendant affirmatively said, "Go ahead." The Supreme Court and Sixth Circuit have expressly approved this language as evidencing consent, rather than acquiescence. See Watson, 423 U.S. at 413; Cochrane, 702 F.3d at 343 (finding voluntary consent based on the defendant's statement to "go ahead" with the search); see also United States v. McCauley, 548 F.3d 440, 447 (6th Cir. 2008) (finding that the statements "go ahead and search," "take a look," "you can go ahead and check," or "help yourself" were each sufficient to convey voluntary consent).[8]

Furthermore, there has been absolutely no evidence of force or coercion, nor is there clear evidence that Defendant believed he was powerless to refuse Trooper Berdan's request. See Cochrane, 702 F.3d at 343. The troopers did not use weapons or patrol lights, and they did not threaten Defendant, demand anything of him, or make any promises. Rather, after being told by Defendant that he did not have anything on him, Trooper Berdan asked if Defendant minded if he pat-searched him for drugs and weapons; Defendant said, "Go ahead." And this entire series of events lasted less than five minutes. Therefore, the Court finds that Defendant's consent was voluntarily and freely given.

---

[8] Defendant argues that the question itself was coercive because Trooper Berdan did not ask if he could pat-search Defendant, but rather if he could pat-search him for drugs and weapons, which "was starting to sound like an arrest situation." Def. Supp. Br. at 5; Def. Reply at 5. The Court fails to see the difference between these two questions, or how one sounds more "like an arrest situation" than the other. Notably, Trooper Berdan asked Defendant, "[D]o you mind if I pat search you . . . for any type of weapons or drugs." Hr'g Tr. at 98 (emphasis added). This is even less suggestive than Defendant's rephrasing of the question, i.e., whether the trooper "could" search Defendant. See Def. Supp. Br. at 5; see also United States v. Taylor, 142 F.3d 438 (Table), 1998 WL 109979, at *6-7 (6th Cir. 1998) (suggesting that language asking if the suspect "minded" a search was more like a request than an order).

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to suppress (Dkt. 13)

SO ORDERED.

Dated: August 11, 2014          s/Mark A. Goldsmith
      Flint, Michigan          MARK A. GOLDSMITH
                                             United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2014.

                                            s/Deborah J. Goltz
                                            DEBORAH J. GOLTZ
                                            Case Manager